### THE RESCUE v. THE GEORGE B. ROBERTS, et al.

(District Court, E. D. Pennsylvania. November 12, 1894.)

1. Salvage Services—What Constitute.

Where a barge, which was the only one of a tow of seven not stranded and sunk, was drifting in a severe storm, without motive power of any kind or an anchor suited to the occasion, and it is probable she would have sunk had she not been rescued by libelant, and conveyed to harbor, the service of libelant is a salvage service, though the barge was stanch and well constructed, and might have survived the storm, and it was possible she would have been picked up by others if libelant had not rescued her.

2. Salvage—Compensation.

A tug rescued a barge adrift in a severe storm on Chesapeake Bay, off Ft. Carroll, and conveyed her to Baltimore. The time occupied was brief, and the expenses to repair the damage sustained in the work were small. The value of the barge and cargo was about $3,700. *Held,* that $800 was a just compensation.

Libel by Vivian Phillips, managing owner of the steam tug Rescue, against the canal barge George B. Roberts and her cargo of coal.

Curtis Tilton, for the Rescue.

John G. Johnson and J. Wilson Bayard, for the George B. Roberts.

BUTLER, District Judge. August 12, 1893, the tug "Stella" started with seven barges in tow, the "Roberts" being one, on a voyage from Baltimore to Philadelphia. Encountering a very severe storm, off Ft. Carroll, on Chesapeake Bay, she turned back, and after remaining in harbor at North Point creek during the night, she continued her course to Baltimore. On her way up five of the barges broke adrift, the Roberts among them, and all save the latter foundered and sank. The tug was unable to afford any aid, all her efforts being required to take care of herself and the balance of her tow. While the Roberts was helplessly drifting before the wind and waves, the libelant who was coming up to Baltimore went to her relief, and making fast a hawser, (with some difficulty) conveyed her to that place.

The respondent does not deny liability for the service, but denies that it was a salvage service which should be compensated ac-

cordingly. This presents the only question involved. How it should be decided depends upon the testimony respecting the "Roberts'" situation, whether she was in peril or not. The testimony respecting this is conflicting, and irreconcilable. A discussion of it would be unprofitable. It is simply a question who should be believed. A careful examination of all the evidence has satisfied me that the Roberts was in serious and immediate peril. She was adrift in a very severe storm, without motive power of any kind, without an anchor suited to the occasion, and was at the mercy of the wind and waves. It is improbable that even a much heavier anchor than the one she carried would have held her, and if she had been held it is more than probable that she would have sunk either from filling with water, or the shifting of her cargo which had already produced a serious list. Smaller vessels dragged much heavier anchors during the storm. When taken in charge she was helpless, and in serious danger of suffering the fate that overtook the other barges torn from the tow. It is true she was stanch and well constructed for a boat of her class; but she had little chance of weathering such a storm. Indeed that she was in peril is sufficiently attested by the fate of the other barges torn loose. Of course it is possible she might have been picked up by others if the libelant had not come to her rescue, or that she might have ridden out the tempest; but such possibility is immaterial; it is much more probable she would have gone to the bottom. That her tug the "Stella" would have returned from Baltimore in time to save her I do not believe. That the storm was very severe is put beyond question by the undisputed evidence of its consequences. The lower streets of Baltimore were flooded, and the running of cars stopped by the waves driven up: several vessels were wrecked or disabled and others torn from their anchorage and stranded in that vicinity. Indeed the consequences to this tow, alone sufficiently attests the violence of the storm.

The libelant rendered salvage service, and must be paid accordingly. While he encountered some risk it was not very serious; the time occupied was very brief, and very little expenditure was necessary to repair the damage sustained in the work. In view of all the circumstances, (the value of the barge and her cargo, which was about $3,700 included) I think $800 a just compensation. There is no rule by which the value of the services in such cases can be accurately measured. At best the award must be the result of an intelligent guess. I may be allowed to say in passing that I incline to believe the award in most cases is more likely to be too high than too low; and that I am not much influenced by what courts have allowed in other instances where the facts, though bearing a general resemblance, are not the same.

I attach no importance to the circumstance that the Roberts left Baltimore after the storm without settling with the libelant. She left on her voyage broken up by the weather, in pursuance of her usual business and habit; and not with intent I think to shirk responsibility.

A decree may be prepared accordingly.